IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PETER T. VON GRONEFELD,   *
             *
Plaintiff,         *
             *
v.            *   Civ. No.  MJM-23-1407
             *
FRANK KENDALL, III, Secretary of the *
Air Force,        *
             *
Defendant.       *
      * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Peter T. von Gronefeld, a former major with the United States Air Force ("USAF"), filed this civil action pursuant to the Administrative Procedure Act ("APA") seeking judicial review of a decision by the Secretary of the Air Force (the "Secretary") denying Maj. von Gronefeld's request to correct two promotion no-selections on his record and his consequent mandatory separation. This matter is before the Court on the parties' cross-motions for summary judgment, ECF 38 & 39, following submission of an administrative record, ECF 28. No hearing is necessary to resolve the motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained herein, the Secretary's motion will be denied, and Maj. von Gronefeld's motion will be granted. The matter will be remanded to the agency for further actions consistent with this Memorandum Opinion and Order.

## I.  FACTUAL BACKGROUND

After 20 years of qualifying service, United States Air Force Reserve ("USAFR") members may retire with benefits, including payment until the age of 60. *See* Complaint ("Compl."), ECF 1, ¶ 14; 10 U.S.C. § 12731(a). A reserve member earns a qualifying year for retirement (commonly

1

called a "good year") by accruing 50 creditable points within dates specific to a member's particular retention/retirement ("R/R") year.[1] *Id.* ¶ 13.

Plaintiff Peter T. von Gronefeld is a former USAFR major. *Id.* ¶ 5. Maj. von Gronefeld served on active duty in the United States Air Force ("USAF") for six years, from 1979 to 1985, and the Air National Guard from 1985 to 1990. *Id.* ¶ 12. From 1993 to 1997, he was assigned to the Inactive Status List Reserve Section ("ILSRS"). *Id.* ¶ 16. Maj. von Gronefeld then served in the USAFR from 1997 to 2001, again earning "good years" for retirement. *Id.* ¶ 18. He did not perform any service duty or point gathering activity after April 1, 2001. *Id.* ¶¶ 20, 27.

By statute, officers in active status below colonel, such as major, who are twice considered but not recommended for promotion to the next higher grade are removed from the active status list and involuntarily discharged. *See* 10 U.S.C. §§ 14505, 14513, 14516. "Air Force members are considered for promotion by a 'promotion selection board' a fixed period of time after their last promotion." *Coleman v. Kendall*, No. 22-1822 (JDB), 2023 U.S. Dist. LEXIS 89451, at *1–2 (D.D.C. July 26, 2023).

In May 2003 and June 2004, the Fiscal Year ("FY") 2004 and FY 2005 promotion boards considered Maj. von Gronefeld for promotion to lieutenant colonel but did not select him for promotion. *See* Compl. ¶ 28. When the promotion boards considered Maj. von Gronefeld for promotion, there was an error in his Point Credit Summary, the record that accounts for a member's reserve participation credit and good years. *Id.* Specifically, Maj. von Gronefeld's Point Credit Summary incorrectly reflected points for active-duty service in the R/R year of July 21, 2001, to

---

[1] "A member earns 15 creditable points for membership in an applicable reserve status and must earn an additional 35 points during their R/R year, typically through training or active-duty days, to be credited with a good year." *Id.* ¶ 13.

July 20, 2002, when they should have been allocated to the previous R/R year (July 21, 2000, to July 20, 2001). *Id.* ¶¶ 21, 28.

In July 2003, the Air Reserve Personnel Center ("ARPC") notified Maj. von Gronefeld that they were recommending he transition to the Non-obligated Non-participating Ready Personnel Section ("NNRPS"), rather than Ready Reserve Personnel ("RRP"), because he had not performed duty for pay, points, or retirement or retention credit from July 2001 through July 2003. *See* Administrative Record ("AR"), ECF 28-2 & 28-3, at 1. Members in the NNRPS do not earn retirement points but are still considered for promotion when eligible. *See* 10 U.S.C. §§ 10141, 14301(a). Members who do not get a "participating assignment" after two years on the NNRPS must be reassigned to the ISLRS. *See* ECF 39-4 at 94 (Air Force Instruction ("AFI") 36-2115 § 4.3.3.3). Members on the ISLRS are inactive and, therefore, are not considered for promotion. AR 157. While on the ILSRS, a member is not required to participate in any training or other program, but they are subject to recall to active status. *See* 10 U.S.C. § 10152.

A month later, in August 2003, Maj. von Gronefeld asked ARPC for an extension in RRP, stating that he had forms to submit for additional point credit, and that he expected to secure a duty assignment by October. AR at 10. ARPC granted the extension, but no additional credit forms were provided, and no assignment was consummated. *Id.* In December 2003, Maj. von Gronefeld again indicated that he had a potential assignment pending, but no assignment was consummated. *Id.* In April 2004, Maj. von Gronefeld told ARPC that he had an assignment pending, but it again did not consummate. *Id.*

Maj. von Gronefeld discovered the error in his Point Credit Summary in early June 2004. AR 196. On June 9th, Maj. von Gronefeld provided ARPC an e-mail/fax dated May 1, 2001, which requested ARPC to place him in NNRPS status, effective that day, May 1, 2001. AR 10. On June

10th, Maj. von Gronefeld spoke with Lt. Col. Rocky Ainsworth about the error and was assured that he would be removed from consideration by the FY 2005 promotion board, but that did not happen.[2] AR 196. On June 13, 2004, Maj. von Gronefeld contacted ARPC by email/fax stating that a correction was needed for "a set of points inadvertently credited for 2002 to be in 2001[.]" AR 164.

In September 2004, Maj. von Gronefeld contacted ARPC again and spoke to Lt. Col. Ainsworth about being twice deferred for promotion. Maj. von Gronefeld explained that he did not believe he should have been considered by the FY 2004 and 2005 promotion boards because he had previously requested assignment to NNRPS effective May 1, 2001. AR at 10. On September 20, 2004, ARPC requested that Maj. von Gronefeld's service record be corrected to reflect assignment to NNRPS effective May 1, 2001. However, the request was not processed because the point system issue had not yet been corrected and therefore showed active duty in June/July 2001. AR 11, 167. On October 19, 2004, ARPC informed Maj. von Gronefeld that he would be reassigned to the NNRPS but did not specify a reassignment date. AR 168. Maj. von Gronefeld was assigned to the NNRPS effective October 22, 2004. AR 11, 168.

On November 3, 2004, the USAF informed Maj. von Gronefeld that he would be terminated effective May 1, 2005, because he had been twice deferred for promotion. Compl. ¶ 39.

On November 13, 2004, Maj. von Gronefeld requested the Air Force Board for Correction of Military Records (the "Board" or "AFBCMR") to change his records to reflect assignment to

---

[2] Maj. von Gronefeld "learned months later[,]" after the FY 2005 promotion board convened, that the errant Point Credit Summary prevented him from being "pull[ed]" from the promotion board. AR 196.

NNRPS effective May 1, 2001. *Id.* at ¶ 42; AR 4.[3] The Board asked the ARPC for an advisory opinion regarding Maj. von Gronefeld's request, and he was then given the opportunity to respond to the advisory opinion. AR 10–12, 13–19. After consideration of the ARPC's opinion, the Board denied Maj. von Gronefeld's request for correction on April 15, 2005. AR 1–3. The Board concluded, first, that Maj. von Gronefeld's request was "not timely filed." AR 3. Second, the Board stated that Maj. von Gronefeld did not provide sufficient evidence of error or injustice to grant his request for correction.[4] *Id.* The Board agreed with the opinion and recommendation of the ARPC, which reasoned:

> The timeline of events reflects that the member was in relative constant contact with HW ARPC/DPRF, Ready Reserve Personnel Section (RRPS) Management from Aug 03 to Sep 04 and he did not raise the issue with 01 May 01 reassignment request until June 2004; which he later asked HQ ARPC to disregard. He consistently spoke of potential paid Reserve assignments during the Aug 2003 to Aug 2004 timeframe, none of which consummated. From Apr 2001 through Oct 2004 he did not perform any duty to fulfill his RRPS participation obligation. When the member did state that he had AF Forms 40A to submit for point credit to stay in good standing with his RRPS obligation, subject forms were not received. He did not readdress a back-dated reassignment to NNRPS until the realization of discharge action due to his being twice-deferred for promotion.

*See* AR 11.

Maj. von Gronefeld was involuntarily separated on May 1, 2005. AR 118. At the time, based on his corrected record, he had accrued 15 good years toward a non-regular retirement. AR 157–58. Maj. von Gronefeld formally requested reconsideration three additional times between April 2005 and April 2006, and each request was denied. AR 20–44, 60–68.

---

[3] The Board, established under 10 U.S.C. §1552, is authorized to correct errors or remove injustices in official Air Force records.

[4] Title 10, United States Code, Section 1552(a)(1) permits the Secretary of a military department to correct military records when "the Secretary considers it necessary to correct an error or remove an injustice."

On March 27, 2009, Diane Holden, Chief of ARPC's Promotion Eligibility Division, sent Maj. von Gronefeld a memorandum acknowledging that, before the second promotion board (FY 2005) convened in June 2004, his record reflected an error in participation points credited to R/R year 2001 to 2002 that should have been credited to R/R year 2000 to 2001, and that, if the points had been verified and corrected before the promotion board convened, Maj. von Gronefeld's May 2001 request for assignment to NNRPS "would have been completed by administratively correcting [his] assignment record." AR 157. Further, Ms. Holden stated that if Maj. von Gronefeld's record had been corrected to reflect the assignment to NNRPS in May 2001 and a subsequent transfer to ISLRS in May 2003 (after two years of not receiving a participating assignment), Maj. von Gronefeld would not have been considered by the FY 2004 and 2005 promotion boards. *Id.*

On May 31, 2009, Maj. von Gronefeld submitted a fourth formal request for reconsideration. *See* AR 84. On January 10, 2012, the Board again denied Maj. von Gronefeld's request, noting that "reconsideration is provided only where newly discovered relevant evidence [is] presented which was not available when the application was submitted," and concluding that, here, "uncorroborated personal observations, or additional argument on the evidence of record are not adequate grounds for reopening a case." AR 70–72. According to Maj. von Gronefeld, he had submitted new and relevant evidence to the Board that included the March 27, 2009, memorandum from ARPC admitting the consequences of the point data error in Maj. von Gronefeld's record. AR 134.

On March 27, 2018, Maj. von Gronefeld submitted his fifth formal request for reconsideration to the Board. AR 125. He requested that the Board correct his records to show that: (1) he was not twice passed over for promotion; (2) he was not involuntarily separated on

May 1, 2005; and (3) he performed service sufficient to qualify for a reserve retirement. AR 128. Maj. von Gronefeld's primary argument was that the March 27, 2009, memorandum admitted error and injustice, and the Board erred in finding that the memorandum was irrelevant or not newly discovered. AR 134–35. Maj. von Gronefeld resubmitted his request on April 29, 2020, AR 124, and the Board requested an advisory opinion from ARPC. The ARPC advisory opinion recommended denial of Maj. Von Gronefeld's request because

> [a] review of the applicant's records and documentation he submitted revealed he did not review his record to ensure it was correct and up-to-date prior to the FY04 and FY05 promotion boards. Therefore, the promotion selection boards reviewed and considered his erroneous Point Credit summary. Had the applicant-reviewed his records prior to the convening of the promotion boards, the erroneous Point Credit Summary could have been administratively corrected. After the correction, his request to be reassigned to NNRPS and ultimately ISLRS would have consummated, which would have made him ineligible to meet the promotion boards.

AR 185.

Maj. Van Gronefeld had an opportunity to respond to the advisory opinion. In a response dated January 29, 2021, Maj. Van Gronefeld (1) attached a declaration stating that he never received his Officer Pre-selection Brief ("OPB") prior to the FY 2004 and 2005 promotion boards; and (2) argued that the Privacy Act, 5 U.S.C. § 522a, and Air Force Instruction ("AFI") 33-332 placed a duty on *USAF* to ensure that his records were accurately maintained. *See* AR 192–93, 196. According to Maj. von Gronefeld, the Privacy Act required USAF to "maintain all records which are used by the agency in making any determination about any individual with such accuracy … as is reasonably necessary to assure fairness to the individual in the determination." AR 192–93 (quoting 5 U.S.C. § 552a(e)(5)). Similarly, Maj. von Gronefeld contended that AFI 33-332 reiterates the Privacy Act by requiring USAF to "[e]nsure records are timely, accurate, relevant, and complete." AR 193 (citation omitted). Accordingly, Maj. Van Gronefeld claimed

that, but for USAF's breach, he would not have been considered by the promotion boards and thus not subject to mandatory separation. AR 193.

The Board found that the evidence presented did not demonstrate material error or injustice justifying a retroactive correction of Maj. von Gronefeld's records effective May 1, 2001. AR 120. Specifically, the Board, agreeing with ARPC's advisory opinion, concluded that Maj. von Gronefeld failed to substantiate that, in accordance with AFI 36-2504, *Officer Promotion, Continuation And Selective Early Removal In The Reserve Of The Air Force*, paragraph 1.7, *see* AR 187, "he took timely actions to ensure his selection record was correct and up-to-date before the convening of the selection boards, nor that his twice non-selections for promotion to O5 were in error or an injustice." AR 120. The Board noted, however, that:

> Notwithstanding the above, one Board member notes there is clear evidence revealing an Air Force error in misallocating points earned in 2001 to the year 2002. This error was corrected and NNRPS officially requested as of 13 Jun 04, but not reflected in the applicant's records until 22 Oct 04. Therefore, the applicant's date for NNRPS should be adjusted to 13 Jun 04 (as opposed to 22 Oct 04). However, there is not sufficient evidence to show that were it not for the Air Force failure to reflect NNRPS status as of 13 Jun 04, the applicant would have been retained and completed additional service sufficient to qualify for a non-regular retirement. Therefore, the Board majority recommends against correcting the applicant's records.

*Id.* The Board ultimately recommended "informing the applicant the evidence did not demonstrate material error or injustice." *Id.*

Thereafter, in April 2021, the Director of the Air Force Review Boards Agency "[h]aving considered the recommendation of the Air Force Board for Correction of Military Records, and under authority delegated by the Secretary," directed that Maj. von Gronefeld's date of assignment

to the NNRPS be amended to reflect June 13, 2004, instead of October 22, 2004. AR 117.[5] All

other requests were denied.

## II.    PROCEDURAL HISTORY

On May 25, 2023, Maj. von Gronefeld filed the instant lawsuit against the Secretary of the

Air Force, seeking judicial review of the 2021 decision under the APA. *See* ECF 1. After the

administrative record was submitted and docketed, ECF 28, the Secretary filed a motion to dismiss

or, in the alternative, for summary judgment, ECF 38. Maj. von Gronefeld responded with a cross-

motion for summary judgment and a memorandum in opposition to the Secretary's motion. ECF

39. The Secretary filed a reply in support of his motion and an opposition to Maj. von Gronefeld's

motion, ECF 45, and Maj. von Gronefeld replied in support of his motion, ECF 47.

## III.    STANDARD OF REVIEW

"Decisions of the AFBCMR are final agency actions subject to judicial review under the

Administrative Procedure Act." *Hoffler v. Mattis*, 677 F. App'x 119, 120 (4th Cir. 2017) (citing

*Chappell v. Wallace*, 462 U.S. 296, 303 (1983)). "The Board's decisions can only be set aside by

this court if they are arbitrary, capricious, not based on substantial evidence, or not in accordance

with law." *Id.* (citations omitted). To determine whether agency action was arbitrary or capricious,

"the court must consider whether the agency considered the relevant factors and whether a clear

error of judgment was made." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192

(4th Cir. 2009).

---

[5] Pursuant to the regulation that governs AFBCMR proceedings, the Board panel acts for the Secretary of the Air Force and its decision is final if relief was recommended by an advisory opinion and the three-member panel unanimously agrees. 32 C.F.R. § 865.4(l)(2). If the Board panel is divided, the "Board sends the record of proceedings on all other applications to the Secretary of the Air Force or his or her designee for final decision." *Id.* § 865.5(l)(3).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In reviewing agency action at the summary judgment stage, the administrative record typically provides the "complete factual predicate for the court's review." *Chan v. U.S. Citizenship & Immigr. Servs.*, 141 F. Supp. 3d 461, 464 (W.D.N.C. 2015), *aff'd sub nom. Roland v. United States Citizenship & Immigr. Servs.*, 850 F.3d 625 (4th Cir. 2017) (citations omitted). Challenges to decisions made by military correction boards are subject to an "unusually deferential application of the arbitrary or capricious standard of the APA." *Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 686 (E.D. Va. 2015), *aff'd sub nom. Downey v. United States Dep't of the Army*, 685 F. App'x 184 (4th Cir. 2017). A "plaintiff has the burden of showing by cogent and clearly convincing evidence that the military decision was the product of a material legal error or injustice." *Heuss v. Toro*, No. 1:21-cv-662, 2022 WL 598055, at *3 (E.D. Va. Feb. 28, 2022) (internal quotation marks and citation omitted).

## IV. ANALYSIS

### A. Timeliness

The Secretary argues that Maj. von Gronefeld's APA claim is time barred. According to the Secretary, the Board's 2005 decision is the final agency action that triggered Maj. von Gronefeld's six-year statute of limitations to bring suit under the APA. *See* ECF 38-1 at 10. Because Maj. von Gronefeld's lawsuit was filed in 2023, the Secretary contends that his suit is untimely and must be dismissed. *Id.* at 12.

Maj. von Gronefeld argues that his APA claim is timely either (a) because his reconsideration requests were timely, which toll the statute of limitations; or (b) because the

agency "reopened" his case in 2021 when it considered the merits of his request, which constitutes new final agency actions that resets the clock to file suit. *See* ECF 39-1 at 32, 33–35.

Under 28 U.S.C. § 2401(a), a civil action against the United States is barred unless filed within six years. A complaint under the APA for judicial review of a final agency action is a "civil action" within the meaning of § 2401(a). *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999). Final agency action means "when the agency has completed its decision-making process, and when the result of that process is one that will directly affect the parties." *Id.* (citing *Franklin v. Mass.*, 505 U.S. 788, 797 (1992)) (cleaned up). Under this framework, then, the Court must identify what agency action is final for purposes of the statute of limitations and what effect, if any, applications for reconsideration have in this context. *See Shurland v. Air Force Bd. for Correction of Mil. Recs.*, No. 3:18CV770 (REP), 2019 WL 5410064, at *4 (E.D. Va. Sept. 24, 2019), *report and recommendation adopted*, No. 3:18CV770, 2019 WL 5395410 (E.D. Va. Oct. 22, 2019), *aff'd*, 791 F. App'x 416 (4th Cir. 2020).

In the context of APA review of military correction boards where a plaintiff has requested reconsideration, courts have taken different approaches. The Seventh Circuit has held that the statute of limitations begins to run at the time of the Board's original decision and that additional requests for reconsideration do not toll the statute. *See Soble v. Amy Bd. for Corr. of Military Records*, 151 F.3d 1033 (7th Cir. 2013) (unpub.). The U.S. District Court for the District of Columbia held that the statute of limitations may be tolled in instances where a plaintiff applies for reconsideration to the Board within six years of the original adverse ruling. *See Nihiser v. White*, 211 F. Supp. 2d 125, 129 (D.D.C. July 16, 2002) (citing *Bethke v. Stetson*, 521 F. Supp. 488, 489–91 (N.D. Ga. 1979)). The Third Circuit concluded that

> any petition for rehearing to the ABCMR [Army Board of Correction of Military Records] which does not include "new

> evidence" or reflect some "changed circumstances" does not re-start the six-year statute of limitations. If, however, the ABCMR re-opens a proceeding and rules upon a petition that does contain such new evidence, such a ruling will constitute a final agency action and will re-start the six-year time limit. This will be the case even if the petition is filed more than six years after the original ABCMR decision in a petitioner's case.

*Green v. White*, 319 F.3d 560, 566 (3d Cir. 2003).

The Sixth Circuit adopted its own rule that considers "the regulations outlining the structure and purpose of the Board's review[,]" *Davis v. United States*, 589 F.3d 861, 864 (6th Cir. 2009), as follows:

> [W]e hold that the statute of limitations is tolled during the processing of a timely request for reconsideration, but we note that this holding does not require a veteran to request reconsideration of the original Board decision in order for his or her claim to be considered exhausted. A claim will be considered exhausted either after the Board's original decision, if there is no request for reconsideration, or after a denial of a timely request for reconsideration. This choice is in the hands of the veteran, because the regulations allow him both avenues for appeal.

*Id.* at 865.

Although the Fourth Circuit has not weighed in, at least two courts in this circuit, including a judge in this District, have followed the Sixth Circuit's approach. *See Lanier-Finn v. Dep't of Army*, 963 F. Supp. 2d 476, 483 (D. Md. 2013) (Williams, J.); *Shurland*, 2019 WL 5410064, at *4.[6] In *Lanier-Finn*, the plaintiff filed an Application for Correction of Military Record to request a correction in her retirement point credit, a promotion to Lieutenant Colonel, and retirement pay. 963 F. Supp. 2d at 479. The Army Board of Correction of Military Records ("ABCMR") denied her request in August 2003. *Id.* at 480. The plaintiff did not seek reconsideration of the Board's decision until May 2009. *Id.* On March 4, 2010, the plaintiff's reconsideration request was

---

[6] The Fourth Circuit summarily affirmed the district court in *Shurland* in an unpublished per curiam opinion. 791 F. App'x 416.

"returned without action pursuant to Army Regulation 15–185 ¶ 2–15, 32 C.F.R. § 581.3(g)(4), because she did not submit her request within one year of the Board's decision." *Id.* The plaintiff then filed her lawsuit in 2012. *Id.* The Court concluded that her Complaint was time barred, reasoning that

> [b]ecause Plaintiff did not timely seek reconsideration, her APA claim accrued on August 25, 2003, at the latest. Therefore, any complaint for relief had to be filed by August 25, 2009. Plaintiff did not file her Complaint in this Court until December 13, 2012. Accordingly, her claims for judicial review under the APA are time-barred, and must be dismissed.

*Id.* at 484.

In *Shurland*, the AFBCMR denied a plaintiff's Application for Correction of Military Records on June 23, 2011, and the plaintiff applied for reconsideration in 2013 "well within the allowed three-year period[.]" 2019 WL 5410064, at *6. The Board denied the plaintiff's application for reconsideration on June 27, 2014. The plaintiff submitted two more requests for reconsideration with the Board between 2015 and 2017, which were both denied. *Id.* at *2–3. Following the AFBCMR's denial of his third request for reconsideration, the plaintiff filed suit on January 14, 2019. *Id.* at *3. The district court, applying the Sixth Circuit's approach, held the suit to be timely, reasoning that the six-year statute of limitations remained tolled until the Board's reconsideration denial of June 27, 2014. *Id.* at *3. Notably, "[b]ecause Plaintiff filed his initial request for reconsideration within the three-year period provided by the [Air Force Instruction 36-2603], and because the Board's decision on Plaintiff's timely reconsideration request [fell] within the six-year limitations period, the Court [did] not consider the potential tolling effects of subsequent reconsideration requests." *Id.* at n.4.

The facts here are distinguishable from both *Lanier-Finn* and *Shurland*. In *Lanier-Finn*, the Board of Correction "returned without action" the plaintiff's request for reconsideration

13

because it was untimely. In *Shurland*, the Court did not have to consider successive requests for reconsideration because the plaintiff's complaint was filed within six years of the Board of Correction's initial denial of reconsideration. Here, unlike in *Lanier-Finn*, the Board of Correction considered the merits of Maj. von Gronefeld's reconsideration request anew—seeking an advisory opinion and allowing Maj. von Gronefeld to respond—which led to a correction being made to his record—albeit, one that was inconsequential to Maj. von Gronefeld's requested relief.  And unlike *Shurland*, the Court here must determine whether the Board of Correction's 2021 decision is a "final agency action" because there is no dispute that Maj. von Gronefeld's complaint would be untimely if the relevant decision is the Board's 2005 decision.

Instead, this case is more analogous to the Third Circuit's decision in *Green*. There, the United States Army "undesirably discharge[d]" the plaintiff in 1950. 319 F.3d at 562. Thirty-one years later, in 1981, the plaintiff requested the Army Discharge Review Board ("ADRB") to review his discharge and upgrade his "Undesirable Discharge" to "Honorable." *Id.* The ADRB rejected the plaintiff's request, so he applied to the ABCMR for review. *Id.* In 1982, the ABCMR upheld the ADRB's decision. *Id.* The plaintiff filed two requests for reconsideration in 1983 and 1986, which were both rejected for failure to submit new evidence. *Id.* In 1999, the plaintiff again filed a petition with the ABCMR to reopen his discharge review case, this time with an affidavit in which the plaintiff asserted that his discharge had been to some extent racially motivated. *Id.* Although the ABCMR initially "refused to re-open [the plaintiff's] case on the grounds that 'no new evidence had been presented that the ABCMR had not previously considered[,]'" the Board in 2000 eventually "decided to 'consider[ ] the new evidence,' appeared to re-open the proceedings, and denied [the plaintiff's] application on the merits." *Id.* The Third Circuit held that because "the Board treated [the plaintiff's] petition as if it contained new evidence and re-opened

the proceedings," its 2000 decision was a final agency action that restarted the limitations period to bring suit. *Id.* at 57.

Here, the Board of Correction also appeared to reopen proceedings in Maj. von Gronefeld's case when, "[a]fter reviewing all Exhibits," it concluded that the "new evidence presented failed to substantiate that [Maj. von Gronefeld] took timely actions to ensure his selection record was correct and up-to-date before the convening of the selection boards, nor that his twice non-selections for promotion to O5 were in error or an injustice." AR 120. Indeed, the AFBCMR's decision resulted in the Secretary of the Air Force taking *some* action with respect to Maj. von Gronefeld's records, although it did not grant the full relief Maj. von Gronefeld sought.

The Court finds that the AFBCMR's reopening of its decision-making process and issuance of a decision on the merits is an exercise of substantive agency discretion that constitutes final agency action for purposes of the APA and thus subject to judicial review. *See Green*, 319 F.3d at 567 (explaining the reopening doctrine); *City of Columbus v. Kennedy*, 796 F. Supp. 3d 123, 161–62 (D. Md. 2025) (same).[7] The AFBCMR reopened Maj. von Gronefeld's case when it decided his most recent reconsideration request on the merits. The Secretary's decision after the Board's recommendation is the final agency action under review, and that action was taken in April 2021. Maj. von Gronefeld filed the instant lawsuit in 2023. Therefore, the suit is timely.

## B.  Arbitrary and Capricious

Both parties move for summary judgment based on the administrative record. The Secretary argues that summary judgment is warranted in his favor because Maj. von Gronefeld has been afforded "the opportunity to present information, documents and argument to the Board of

---

[7] Although most "reopening doctrine" appears in the context of rulemaking, I am not aware of any authority preventing its application to the adjudication context; indeed, *Green* suggests that it is applicable.

Corrections a total six times between 2004 and 2021[,]" and this Court should defer to "the Board's careful assessment of the many arguments presented by Maj von Gronefeld over the past eighteen years[.]" ECF 38-1 at 13–14 (emphasis omitted). Maj. von Gronefeld raises several arguments in support of his contention that the final agency action here "was arbitrary, capricious, contrary to law, an abuse of discretion and unsupported by substantial evidence." ECF 39-1 at 22–26. First, he argues, "[t]he record demonstrates that Maj. von Gronefeld first requested placement on the NNRPS on May 1, 2001[,]" so the agency erred by noting June 13, 2004, as the date Maj. von Gronefeld "officially requested" placement on the NNRPS. *Id.* at 23. Second, Maj. von Gronefeld argues the agency fails to grapple with the March 2009 memo admitting error. *Id.* at 24. Third, Maj. von Gronefeld argues that the agency acted arbitrarily and capriciously in failing to address the duty that the Privacy Act and Air Force regulations placed on the Air Force "to maintain timely, accurate, relevant and complete records" and "Plaintiff's affidavit stating he did not receive an OPB." *Id.* at 25. Finally, Maj. von Gronefeld contends that "all these clear infirmities amount to a failure by the AFBCMR to correct an injustice clearly presented in the record before it." *Id.*

Although significant deference is owed to military personnel decisions, the Court finds no genuine dispute of material fact that the Secretary's action was arbitrary and capricious in his failure to consider Maj. von Gronefeld's declaration that he did not receive his OPB prior to the FY04 and FY05 promotion boards and his contention that it was USAF's duty to ensure the accuracy and completeness of his records.

"Agency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely *failed to consider an important aspect of the problem*, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

16

expertise.'" *Appalachian Voices v. United States Dep't of Interior*, 25 F.4th 259, 269 (4th Cir. 2022) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)) (emphasis added).

Title 10, United States Code, Section 1552 empowers the Secretary of a military department to correct military records when "the Secretary considers it necessary to correct an error or remove an injustice." The administrative record here establishes that, in a memo dated March 27, 2009, the Chief of ARPC's Promotion Eligibility Division acknowledged an error USAF made in Maj. von Gronefeld's record by crediting participation points to the wrong R/R year, which, ARPC further acknowledged, caused another error in USAF's failure to assign Maj. von Gronefeld to NNRPS effective May 2001. AR 157. An "important aspect" of the issue in this case is the role the foregoing errors played in Maj. von Gronefeld's non-selection at the FY 2004 and 2005 promotion boards, which resulted in mandatory separation. *See Appalachian Voices*, 25 F.4th at 269. Again, ARPC admitted that USAF's errors caused the FY 2004 and 2005 promotion boards to consider Maj. von Gronefeld for promotion, in further error. AR 157. According to ARPC's Chief of Promotion Eligibility, Maj. von Gronefeld "would not have met the FY04 (convened in June 2003) and FY05 (convened in June 2004) LtCol Promotion boards[]" "[i]f [his] record had been corrected to reflect" Maj. von Gronefeld's assignment to NNRPS in May 2001. *Id.* That correction was precluded by the incorrect allocation of points to Maj. von Gronefeld's R/R year 2001 to 2002, which should have been credited to R/R year 2000 to 2001. *Id.*[8]

While the Secretary and AFBCMR reasoned it was Maj. von Gronefeld's responsibility to ensure accuracy of his own military records, and thus no injustice occurred, *see* ECF 38-1 at 5 n.1

---

[8] The Secretary dismisses or minimizes the import of the Promotion Eligibility Chief's memo to Maj. von Gronefeld as a response to a "hypothetical" inquiry, ECF 38-1 at 7–8, but, on its face, the letter refers directly and specifically to Maj. von Gronefeld's record. The Secretary cites nothing in the record to suggest that the Promotion Eligibility Chief's statements were merely hypothetical.

(citing AFI 36-2504); ECF 45 at 5, there is no evidence that either the Secretary or the AFBCMR considered Maj. von Gronefeld's argument that USAF also had a duty to maintain accurate records. Indeed, the Privacy Act provides that an "agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonable necessary to assure fairness to the individual in the determination[.]" 5 U.S.C. § 552a(e)(5). The same duty is recognized in AFI 33-332.4.2. The Secretary is correct that AFI 36-2504.1.7 requires an officer eligible for promotion to ensure the correctness of their own selection record, review their OPB for "accuracy of personnel data[,]" and report any errors. *See* ECF 38-1 at 5 n.1. But the Secretary is required to "notify in writing the officers eligible for consideration by the board for promotion regarding the convening of the board," 10 U.S.C. § 14105(a), and Maj. von Gronefeld submitted a declaration to the Board that he did not receive an OPB to review before (or after) either the FY 2004 or 2005 promotion board convened, AR 196. He did not discover the error in his Point Credit Summary until June 2004, and when he contacted ARPC about it, he was assured that his file would be "pull[ed]" from the FY 2005 promotion board, but it wasn't. *Id.*

In its April 8, 2021, decision, the Board accurately summarized Maj. von Gronefeld's arguments, *see* AR 119, but reasoned as follows:

> The Board majority concurs with the rationale and recommendation of ARPC/PB and finds a preponderance of the evidence does not substantiate the applicant's contentions. Specifically, the new evidence presented failed to substantiate that IAW AFI 36-2504, he took timely actions to ensure his selection record was correct and up-to-date before the convening of the selection boards, nor that his twice non-selections for promotion to O5 were in error or an injustice.

AR 120.

There are multiple problems with the Board's conclusion. Maj. von Gronefeld's arguments were in response to the ARPC's advisory opinion. Thus, if the Board simply deferred to the advisory opinion, then it failed to account for the arguments Maj. von Gronefeld made in response to that opinion. But even if it did not simply defer to the ARPC's opinion, the Board failed to address Maj. von Gronefeld's declaration and arguments regarding the Privacy Act and AFI 33-332. Instead, the Board stated that the "new evidence" failed to explain that he took timely actions to ensure his selection record was correct and up to date before the promotion boards convened. That reasoning failed to address the arguments made in Maj. von Gronefeld's January 29, 2021, response that USAF breached its duty to ensure accurate records under the Privacy Act and AFI 33-332, and that breach eventually resulted in the alleged injustice of Maj. von Gronefeld's mandatory separation. In support of that argument, Maj. von Gronefeld provided a declaration explaining that he never received an OPB to review for accuracy and, when he became aware of the error in his Point Credit Summary in June 2004 and contacted ARPC about it, nothing was done to remove him from consideration by the FY 2005 promotion board, as promised. There is no indication, other than the Board's accurate summary of Maj. von Gronefeld's argument, that the Board took any position on the new evidence Maj. von Gronefeld offered or the argument it supported. *See Molina Mendoza v. Sessions*, 712 F. App'x 240, 244–45 (4th Cir. 2018) (explaining that, although the APA does not always require an exhaustive explanation, an agency must "meaningfully account for [contradictory] evidence" and noting that "boilerplate language" is insufficient); *Williams v. Roth*, Civ. No. PX-21-02135, 2022 WL 4134316, *7 (D. Md. Sept. 12, 2022) (concluding that agency decision "must be set aside[]" where the board of correction failed to consider plaintiff's arguments).

Maj. von Gronefeld offers *Thompson v. United States*, 119 F. Supp. 3d 462 (E.D. Va. 2015), in support of his position. That case involved a challenge to the ABCMR's denial of Lieutenant General ("LTG") Nathaniel Ross Thompson III's request to correct his military records to reflect a timely transfer of Post-9/11 GI Bill education benefits to his family. Under the Post-9/11 GI Bill, LTG Thompson was eligible to receive 36 months of education benefits, and, because he was retirement-eligible as of August 1, 2009, he was also eligible to transfer those benefits to his spouse or children. *Id.* at 465. But federal law required that any transfer of education benefits be elected while the service member was still on active duty. *Id.* Department of Defense policy required the Army to provide eligible service members with individual counseling on Post-9/11 GI Bill benefits. *Id.* LTG Thompson alleged that he never received this required counseling and therefore was unaware that he had to elect the transfer of benefits before retiring. *Id.* In October 2011, LTG Thompson applied to the ABCMR seeking to amend his records to allow a post-retirement transfer of benefits, explaining that the requirement had not been covered in his retirement briefings. *Id.* at 465–66. The Army recommended denial, reasoning that his lack of awareness did not justify relief. *Id.* at 466. The ABCMR adopted this reasoning and denied LTG Thompson's application in February 2012. *Id.* LTG Thompson sought reconsideration in February 2013, arguing that the Army's failure to provide required pre-separation counseling deprived him of the ability to make a timely election. *Id.* In November 2013, the ABCMR denied reconsideration, concluding that the new evidence did not warrant relief. *Id.*

LTG Thompson brought suit under the APA, and the district court held that the ABCMR's decision was arbitrary and capricious. Specifically, the court reasoned that "[t]hrough no fault of his own, LTG Thompson was never afforded the benefit of individual counseling concerning his

rights under the 9/11 GI Bill." *Id.* at 470. The court further observed, "Defendants seek to avoid their responsibilities under the bill, but yet force LTG Thompson to abide by his." *Id.*[9]

The *Thompson* court's reasoning is persuasive and supports this Court's view that a military agency fails to consider an important aspect of the case when it explains its action by citing a member's failure to meet a regulatory requirement while offering no explanation for ignoring the member's argument that the agency failed to satisfy its own complementary obligations.

To be certain, this Court takes no position on the merits of the factual contentions and arguments Maj. von Gronefeld presented to the Board. Deciding the merits of Maj. von Gronefeld's position was and remains the Board's responsibility to decide. Its failure to do so—its failure to consider important aspects of Maj. von Gronefeld's case, *Appalachian Voices*, 25 F.4th at 269—renders the Secretary's decision arbitrary and capricious and warrants vacatur of the decision and remand for reconsideration.

## V.    CONCLUSION

For the foregoing reasons, the Secretary's motion for summary judgment is denied, and Maj. von Gronefeld's motion for summary judgment is granted. The matter is remanded to the agency for further actions consistent with this Memorandum Opinion.

  3/11/26
Date

Matthew J. Maddox
United States District Judge

---

[9] The court also noted that LTG Thompson received confusing information about the procedure he needed to follow, *see id.* at 470, and the court sought "to correct what it perceive[d] as a grave injustice to LTG Thompson[.]" *Id.* at 471.